JOYNBS, J.
The judgment in this case, as it stands, is undoubtedly one which the court could not lawfully render. As a court of law, it could not render a judgment requiring the company to transfer and deliver so many shares of stock to the plaintiff. Upon a contract to deliver stock in payment of a debt, or otherwise, it could only award damages for the failure to deliver it, which would be the value of the stock at the time it ought to have been delivered. But by the contrivance adopted in this case, the court, in effect, gave judgment for the stock, with an alternative judgment for money in case the stock should not be delivered. This judgment was not merely informal and irregular — it was essentially erroneous and illegal.
The judgment must therefore be reversed, unless the errors can be corrected, or unless it -can be shown that the company has no right to complain of the errors. It is contended that the error consists only in the provision allowing the company to discharge the judgment for *money by the delivery of stock. This, it is contended, may be rejected as surplusage, and, more over, the error is in favor of the company, and so cannot be complained of by it.
It may be conceded that the privilege of paying in stock was for the advantage of the company, and does not, of itself, afford a ground of complaint to the company, and also that, by rejecting that part of the order, there will remain a judgment for morfey in sufficient legal form. But can we hold that judgment to be right in substance? In other words, can we say that the sum of money for which the judgment was given, was the value of the stock which the company was bound to deliver to the plaintiff? It is contended that we must presume this in support of the judgment upon the general ground applicable to judicial proceedings. But I do not think we can make such a presumption. In the first place the court has only decided that the plaintiff will be entitled to the sum of money mentioned, provided the company does not, within six months, transfer the stock. This is the substance though not the form of the judgment. I do not see how we can presume from this that the plaintiff was entitled to this sum at once, and without any condition?
Besides, it appears distinctly from the proceedings, that the stock was the only subject of controversy. At June term 1856, there was a judgment for the plaintiff for $259.97, with interest, which seems td have been a part of the plaintiff’s demand which was payable in money. At the same time the company made a declaration, which was entered of record, of its readiness to pay the residue of the plaintiff’s demand, to wit: so much thereof as was payable in stock, to the party who might be justly entitled to demand it; and caused certain parties, alleged to be claimants of the stock, to be ‘summoned to appear and assert their claims, by way of interpleader. After these parties had been duly summoned, the court proceeded to render the judgment complained of, at the end of which was added an order, that the other claimants should be forever barred of all claim against the company in respect to the subject matter.
It is apparent that the only claim upon which the court intended to decide, was the claim to the stock; and that it undertook, by the judgment that was rendered, to compel the delivery of the stock. How it arrived at the sum of money for which it gave judgment, does not appear. It may, for anything that appears, have been fixed upon arbitrarily, as a penalty. I do not think this probable, however, and I presqme the fact is, that it gave judgment for the sum of money appearing by the account to be due to the plaintiff for the twenty per cent, retained on his estimates, and which was to be paid in stock; and this may have been done upon the supposition that the company was bound to pay this sum in money, if it did not choose to pay it in stock. There are papers in the transcript which show that the sum for which judgment was given, was the twenty per *383 cent, retained, but they do not belong'to the record, and cannot be made a ground of decision. Under these circumstances, if they stood alone, I do not think we would be authorized to presume that the sum of money for which judgment was given was the value of the stock. This case may be illustrated by the case of a bond in a penalty, to be discharged by the performance of a collateral act. If the court should render a judgment for the sum named in the penalty, with a proviso that it may be discharged by the performance of the collateral act, within a time limited, could we presume, in support of the judgment, that the court assessed damages for the non-performance of the '^collateral act, at a sum just equivalent to the penalty, and that the sum mentioned in the judgment represented the damages thus assessed? I think not. Other considerations seem to show that this sum was not fixed upon as the value of the stock. The sum for which judgment was given was $448.41, with interest from January 1, 18S3, till paid. If it was the value of the stock, it was its value on the 1st January, 18S3. The court gave the company the privilege of paying this sum in stock at par value, at any time before the 25th January, 1858. Now upon the supposition that the money represented the value of the stock on the 1st da3r of January 1853, there could not be a greater injustice than this privilege to the company. It allowed the company to pay off the value of stock on the 1st day of January 1853, by a transfer of stock, at par value, five years after-wards, though it might have greatly depreciated in the interval. We are not at liberty, upon a mere presumption, to attribute such injustice to the Circuit court. Moreover, after the company had made default in not delivering the stock, and damages to the value of the stock had been awarded for it, it had no right, legal or moral, to pay in stock, and the plaintiff could not be compelled to accept stock. And so, after accepting a judgment for damages, the plaintiff had no right, legal or moral, to demand stock, if he preferred it to the money.
We cannot suppose that the Circuit court disregarded such obvious principles of law and justice. It would, therefore, be at war with every reasonable presumption, to hold that the sum of money for which the court gave judgment represented the value of the stock which the company was bound to deliver to the plaintiff.
It follows from what has been said, that we. are not authorized to reject that part of the order w'hich gives the company the privilege of paying in stock, and affirm the ^residue which gives judgment for the money. That could only be done in case the record showed, or afforded reasonable ground to presume, that the judgment for money was correct. Where a plaintiff who has recovered a judgment w'hich, as rendered, is clearly erroneous, seeks to avoid a reversal by striking out part of the judgment, it is incumbent on him to satisfy the court, either by the materials in the record, or by fair presumption, that this can be done without injustice to* the defendant. If he cannot do this, the defendant is entitled to have the erroneous judgment reversed.
These views render it unnecessary to consider many questions which have been raised in the argument.
The judgment should be reversed, and the case remanded for a new trial.
MONCURE), J., concurred in the opinion of Joynes, J.
Judgment reversed.